# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**DAVID WILLIAM SHAW,**

      **Plaintiff,**

**vs.**                       **Case No. 4:16cv549-MW/CAS**

**MR. SCOGGINS, P.A.,**
**MRS. C. GLAVEY, R.N.,**
**and MRS. C. PRICE, R.N.,**

      **Defendants.**

_____/

## THIRD REPORT AND RECOMMENDATION[1]

Plaintiff filed a pro se civil rights complaint pursuant to 42 U.S.C.

§ 1983 claiming that the Defendants failed to provide him with timely and

appropriate medical care.  ECF No. 1.  After the discovery period closed,

Defendants filed a motion for summary judgment, ECF No. 92, supported

by copies of Plaintiff's medical records, ECF No. 91.  Plaintiff was advised

---

[1] The first Report and Recommendation entered in this case concerned Plaintiff's motions for default judgment against Defendants Scoggins and Price and two motions to set aside the Clerk's defaults entered against Defendants Scoggins and Price.  ECF No. 68.  A Second Report and Recommendation, ECF No. 82, was previously entered in this case, recommending that Defendants' motion to dismiss, ECF No. 74, be denied. The Report and Recommendation was adopted without objection.  ECF No. 86.

of his obligation to respond to the motion, ECF No. 96, and his opposition was timely filed.  ECF No. 99.  Thereafter, Defendants filed a reply, ECF No. 101.

**Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Thus, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553.  The non-moving party must

then show[2] though affidavits or other Rule 56 evidence "that there is a genuine issue for trial" or "an absence of evidence to support the nonmoving party's case."  *Id.* at 325, 106 S. Ct. at 2554; Beard v. Banks, 548 U.S. 521, 529, 126 S. Ct. 2572, 2578, 165 L. Ed. 2d 697 (2006).

An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).  Additionally, "the issue of fact must be 'genuine'" and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (other citations omitted).  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th

---

[2] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "  Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

Cir. 2003) (quoting Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  Anderson, 477 U.S. at 249, 106 S. Ct. at 2511 (noting that a "scintilla of evidence" is not enough to refer the matter to a jury).  The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Hickson Corp., 357 F.3d at 1260 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986)).  All "justifiable inferences" must be resolved in the light most favorable to the nonmoving party, Beard, 548 U.S. at 529, 126 S. Ct. at 2578 (noting the distinction "between evidence of disputed facts and

disputed matters of professional judgment."),[3] but "only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoted in Ricci v. DeStefano, 557 U.S. 557, 586, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356 (other citation omitted).

**The relevant Rule 56(e) evidence**

Plaintiff's evidence is that while incarcerated at Wakulla Correctional Institution, he was involved in an altercation with another inmate on March 11, 2016, at approximately 10 a.m.  ECF No. 1 at 5.[4]  Before placing

---

[3] Noting that deference must be given "to the professional judgment of prison administrators," the Court stated that "[u]nless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." Beard, 548 U.S. at 530, 126 S. Ct. at 2578 (citing Overton v. Bazzetta, 539 U.S. 126, 132, 123 S. Ct. 2162, 2167, 156 L. Ed. 2d 162 (2003)).

[4] An inmate's statements in a verified complaint or a sworn response to a motion for summary judgment is appropriately treated as "testimony" when ruling on a summary judgment motion.  Sears v. Roberts, 922 F.3d 1199, 1206 (11th Cir. 2019) (citing United States v. Stein, 881 F.3d 853, 857 (11th Cir. 2018) (en banc) ("[O]ur cases correctly explain that a litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment.") and Barker v. Norman, 651 F.2d 1107, 1115 (5th Cir. Unit A 1981) (stating that a verified complaint serves as the equivalent of an affidavit for purposes of summary judgment)).  Plaintiff's complaint, ECF No. 1, and summary judgment response, ECF No. 99, present sworn statements.

Plaintiff in administrative confinement, he was escorted to medical for a pre-confinement physical. *Id.* at 5-6. There, Plaintiff saw Defendant Glavey who took his vitals. *Id.* at 6. Plaintiff said he began to sweat profusely, his injured arm became "very numb," he felt "very nauseous and began to vomit." *Id.* Defendant Glavey informed the "acting doctor on duty" (Defendant Scoggins, a P.A.) about Plaintiff's symptoms and asked if he would examine Plaintiff. *Id.* Defendant Scoggins said that Plaintiff should not have gotten into a fight "and proceeded to ignore" the Plaintiff. *Id.* Defendant Glavey told Plaintiff, "I'm sorry, I tried." *Id.* Defendant Glavey advised Plaintiff to sign up for sick-call,[5] and gave him some Ibuprofen, although Plaintiff said no examination was made. *Id.* Plaintiff was sent to administrative confinement. *Id.*

At around 9 p.m. that same day, Plaintiff saw Defendant Price passing out medication in the confinement housing unit. ECF No. 1 at 6. Plaintiff, who had made a sling for his arm out of a t-shirt, stopped Defendant Price and asked her "for help." *Id.* He said that it was "so highly swollen and bruised that a lay person would easily conclude" that he

---

[5] Plaintiff said that this occurred on a Friday and sick call was not provided at Wakulla C.I. on the weekends. ECF No. 1 at 6.

"needed a doctors attention." *Id.* at 7.  He told Defendant Price that he

thought his arm was broken and advised her that he could not move his

arm.  *Id.*; *see also* ECF No. 99 at 2.  Plaintiff also requested pain

medication from Defendant Price.  ECF No. 1 at 7.  Plaintiff states that she

denied the request for medication because "according to her log [he] had

been provided Ibuprofen earlier in the day." *Id.*  Plaintiff said that

Defendant Price did not examine his arm and told him that he "had

probably just pulled a muscle" and walked away from his cell. *Id.*  Plaintiff

said the only thing Defendant Price did was check his vitals, failing to even

give him a proper sling.  ECF No. 99 at 2-3.

The next afternoon, Plaintiff "declared a medical emergency due to

the excruciating pain" he was experiencing.  ECF No. 1 at 7.  He was taken

to medical and once again saw Defendant Glavey. *Id.*  Plaintiff said he

thought his "arm was broken and showed her how grotessely [sic] the injury

had swollen and bruised" and his "inability to move the arm." *Id.*

Defendant Glavey gave him a proper medical sling for his arm instead of

the t-shirt he was using, but placed him back in his cell without examining

his arm and only put him on a "call-out to see a doctor" on Monday, which

was two days away. *Id.*

Although Defendant Glavey sent Plaintiff to his cell, she went to his cell about three hours later and told Plaintiff she had contacted the doctor at home and he authorized her to "administer two injections, one for the pain [and] the other for the swelling." *Id.* at 7-8. Plaintiff reports that the pain and swelling was so great, the injections had no effect. *Id.* at 8.

Two days later, on Monday, March 14, 2016, at approximately 11 a.m., Plaintiff was examined by Defendant Scoggins, the same person Plaintiff said refused to see him on Friday. ECF No. 99 at 4. Plaintiff states that after "a simple 30 second examination," Defendant Scoggins "was quite certain" that Plaintiff's arm was broken. *Id.* Defendant Scoggins directed that Plaintiff be immediately transported to the hospital for x-rays. ECF No. 1 at 8; *see also* ECF No. 99 at 4. Plaintiff submitted a copy of a facsimile sent by Nurse Powell at Wakulla C.I. which stated Plaintiff was "being transfered [sic] to TMH via van for unstable FX of Rt. Humerous [sic] that occured [sic] 3/11/16." ECF No. 99 at 8.

At the hospital, x-rays were taken which revealed Plaintiff's "arm just below the right shoulder was in fact broken." ECF No. 1 at 8. The medical record reveals Plaintiff had a "humerus fracture" and he was to follow up with Tallahassee Orthopedic Clinic [TOC] "as soon as possible," but return

to the emergency room if his symptoms worsened.  ECF No. 99 at 10.

Surgery was eventually performed and a 7 inch steel rod with 16 screws

were used to keep the broken bone securely in place.  ECF No. 1 at 8; *see*

*also* ECF No. 99 at 12.

Defendants acknowledge that Plaintiff was examined by Defendant

Glavey at approximately 10:45 a.m. on Friday, March 11, 2016.  ECF No.

91-1 at 2.  Plaintiff was complaining of right shoulder pain.  *Id.*  Defendant

Glavey noted a one-inch "superficial abrasion above [the] right elbow," but

she saw "no discoloration or swelling."  *Id.* at 3.  Defendant Glavey

contacted Defendant Scoggins, a physicians assistant, and notified him of

Plaintiff's injury.  *Id.*  The form indicates no orders were given by Defendant

Scoggins.  *Id.*  Nurse Glavey completed a "fracture/ dislocation/sprain

protocol" form indicating Plaintiff reported his pain level as a 7 on a scale of

1-10.  *Id.*  Defendant Glavey noted on the form that Plaintiff had "extremity

tingling," but it is unclear from her notation whether Plaintiff had extremity

numbness.  *Id.*[6]  She also provided Plaintiff with 10 packs of Ibuprofen,

along with instructions for dosing, and instructed him to immediately report

---

[6] It is unclear because both the "yes" and "no" boxes are checked.  ECF No. 91-1 at 3.

any change in his condition. *Id.* at 3-4. Finally, she issued Plaintiff a pass for no pushing, pulling or lifting with his right arm. *Id.* at 3.

Later that same day, Defendant Price saw Plaintiff while in the J-Dorm. ECF No. 91-1 at 8. Defendant Price noted there was a "strong" and "regular" pulse in the right arm, he could move his arm at the elbow, but not at the shoulder. *Id.* She noted in the medical record that Plaintiff's arm "did not look swollen - looked same as" his left arm. *Id.* Defendant Price noted Plaintiff was using a t-shirt as a sling and Plaintiff said he had already consumed all of the Ibuprofen previously given to him. *Id.* She explained the limits to Plaintiff about that medication[7] and told Plaintiff "to fill out a sick call [request] for Monday morning," March 14th. *Id.*

On the next day, March 12th, Plaintiff saw Defendant Glavey and he was again complaining of right shoulder pain. *Id.* Upon examining him, she noted there was "moderate" swelling and bruising from the "armpit area down halfway upper arm" with moderate edema. *Id.* at 6, 8. Plaintiff reported his pain level at an 8, and said he could not lift his arm but could

---

[7] Defendants advise that Plaintiff was given 10 packs of Ibuprofen, and each pack contained 2-200 mg. tablets. ECF No. 92 at 3, n.1. Thus, Plaintiff "supposedly took 4000 mg. in less than 10 hours." *Id.* "The recommended maximum daily dose is 3200 mg." *Id.*

"move arm from elbow down."   *Id.* at 6, 8.  Defendant Glavey noted that

Plaintiff was able to wiggle his fingers.[8]  *Id.* at 8.  The medical record

indicates there was no deformity, no tingling or numbness.  *Id.* at 6.  She

contacted the physician, Dr. Acosta, who ordered a sling, injections

of Solu Medrol (a synthetic steroid) and Toradol (a non-steroidal pain

medication), along with Tylenol.  *Id.* at 6, 10.  There is also a notation in the

"fracture/dislocation/sprain protocol" form which states to x-ray the shoulder

on Monday.  *Id.* at 6.  Similarly, the "physician's order sheet" listed

medications to be given to Plaintiff and directed an x-ray be taken on

Monday. *Id.* at 10.

Two days later, on March 14th, Plaintiff was examined by Defendant

Scoggins.  ECF No. 91-1 at 12.  Defendant Scoggins wrote an order for

Plaintiff to be transferred to an "outside facility for further evaluation of Rt.

Arm."  *Id.* at 12.  The "Summary for Emergency Transfer" form notes that

Defendant Scoggins diagnosed Plaintiff with an unstable fracture of the

right humerus.  *Id.*; *see also* at 9, 10.

Plaintiff was taken to Tallahassee Memorial Hospital for treatment

and x-rays on March 14, 2016.  ECF No. 91-1 at 12.  The emergency room

---

[8] An additional notation about Plaintiff's fingers is not legible.  ECF No. 91-1 at 8.

record indicates Plaintiff reported suffering the injury three days prior.  *Id.* at

15.  Plaintiff said he had "nausea, one episode of vomiting and

diaphoresis."  *Id.*  Plaintiff described his "pain as a sharp 10/10 constant

pain that is only minimally improved with rest."  *Id.*  He said the pain

"begins about midway up the upper right arm and goes to the shoulder."

*Id.*  He said he could not move his arm without pain.  *Id.*  That E.R.

treatment record noted that Plaintiff's pain was "moderate" and the "degree

of swelling [was] minimal."  *Id.*  Plaintiff denied having tingling, numbness,

or a fever.  *Id.*

　　Four x-rays were taken which revealed a fracture of the humerus[9]

with displacement, "bone fragments present," and "soft tissue swelling

present."  *Id.* at 17.  A "long arm splint" was placed on Plaintiff's right arm

and Plaintiff was directed to follow-up with TOC "as soon as possible."  *Id.*

at 18.

　　Plaintiff was returned to the institution during the evening of March

14th, and it appears he was admitted to the prison infirmary.  ECF No. 91-1

---

[9] Notably, the "preliminary report" received on the x-rays of the right humerus
stated it was positive for a fracture of the femur, which is a leg bone.  ECF No. 91-1 at
13.  The report was clearly error, and the emergency room's "treatment record" noted
that the emergency room physician interpreted the x-ray film himself.  *Id.* at 17.

at 11, 20.  Plaintiff was given a physical examination by ARNP Lemon-Watson on March 15, 2016, ECF No. 91-1 at 20, and a request was submitted for an emergency consultation with TOC.  *Id.* at 21.  It was approved and Plaintiff was evaluated by Dr. Wong, an orthopedist, on March 17, 2016.  *Id.* at 21-24.  Dr. Wong noted "some swelling present and early ecchymosis," which is bruising.  *Id.* at 24.  The record notes that Plaintiff had pain "with any attempt at passive shoulder" movement and "tender to palpation over humeral head and greater tuberosity."  *Id.*

Dr. Wong provided two treatment options, one was "non-surgical management" and one was surgical.  *Id.*  He believed surgery was the "better choice," as "an attempt need[ed] to be made to improve the alignment and internally fix and stabilize the fracture."  *Id.*  Dr. Wong outlined the complications and risks, and advised "that even with successful surgery, the motion in this shoulder will never be normal, especially with internal rotation behind the back."  *Id.*  He also stated that "[t]he need for further surgery [was] possible if any of the complications were to occur."  *Id.*

Surgery was performed on March 23, 2016, by Dr. Hutchinson and Plaintiff was to "have his overhead activities restricted for six weeks with

unlimited range of motion of his elbow, forearm, hand and wrist." *Id.* at 31.

Plaintiff was advised he could "resume active and passive range of motion

of the shoulder in six weeks." *Id.* His recovery appears to have been

monitored at the institution by Dr. Acosta and ARNP Lemon-Watson and

Plaintiff was kept in the infirmary. *Id.* at 31-35, 39-42. By early April,

Plaintiff was reporting that his pain was getting better. *Id.* at 39-42.

Plaintiff returned to TOC for a follow-up appointment on April 7, 2016.

*Id.* at 36. The records note that the surgical incisions were "well-healed

and present without drainage, erythema, or any other signs of infection or

complication." *Id.* at 43. Plaintiff was found to be "neurovascularly intact

with soft compartments including Axillary, Musculocutaneous, Radial,

Ulnar, Median, AIN and PIN all appropriate to testing with brisk capillary

refill noted to all digits." *Id.* It was noted that Plaintiff was "unable to

extend his right elbow with tightness to the distal aspect of the humerus, no

effusion or tenderness of the elbow." *Id.* Post-surgical x-rays were taken

which revealed "no callus formation" and the "hardware" was in the "correct

position." *Id.*

Plaintiff was instructed "to remain non-weightbearing to the involved

extremity" and he was advised to work on extension/range of motion in his

right elbow daily.  ECF No. 91-1 at 44.  Plaintiff was to return in four weeks

for another follow-up.  *Id.*  The records indicate Plaintiff had that follow-up

appointment and additional x-rays were taken on May 13, 2016.  *Id.* at 45.

The x-rays revealed that Plaintiff's "extensive orthopedic hardware fixating

a recent proximal humeral fracture [was] in anatomic alignment."  ECF No.

91-1 at 45.  Plaintiff was discharged from the infirmary on April 8, 2016.  *Id.*

at 11.

**Analysis**

The Eighth Amendment governs the conditions under which

convicted prisoners are confined and the treatment they receive while in

prison.  Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed.

2d 811 (1994).  The Eighth Amendment guarantees that prisoners will not

be "deprive[d] ... of the minimal civilized measure of life's necessities."

Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed.

2d 59 (1981) (quoted in Chandler v. Crosby, 379 F.3d 1278, 1289 (11th

Cir. 2004)).  "[B]asic human necessities include food, clothing, shelter,

sanitation, medical care, and personal safety."  Harris v. Thigpen, 941 F.2d

1495, 1511 (11th Cir. 1991) (cited in Collins v. Homestead Corr. Inst., 452

F. App'x 848, 850-851 (11th Cir. 2011)).

Deliberate indifference to serious medical needs of prisoners violates the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (quotations omitted) (quoted in Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011)). "In either of these situations, the medical need must be 'one that, if left unattended, 'pos[es] a substantial risk of serious harm.'" Farrow, 320 F.3d at 1243 (citation omitted); *see also* Mann v. Taser Intern., Inc., 588 F.3d 1291, 1307 (11th Cir. 2009). Alternatively, "a serious medical need is determined by whether a delay in treating the need worsens the condition" or "if left unattended, poses a substantial risk of serious harm." Mann, 588 F.3d at 1307 (citations omitted). "Severe pain that is not promptly or adequately treated can also constitute a serious medical need depending on the circumstances." Harris v. Prison Health Servs., 706 F. App'x 945, 951 (11th Cir. 2017) (citations omitted).

Deliberate indifference requires more than negligence,[10] but it is unnecessary to show a defendant intended to cause harm.  Farmer, 511 U.S. at 835, 114 S. Ct. at 1978, 128 L. Ed. 2d 811 (1994).  Deliberate indifference requires a plaintiff to show that a defendant was subjectively reckless and consciously disregarded a substantial risk of serious harm. Wilson v. Seiter, 501 U.S. 294, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (explained in Farmer, 511 U.S. at 838-40, 114 S. Ct. at 1979-80).  "The inadvertent or negligent failure to provide adequate medical care 'cannot be said to constitute 'an unnecessary and wanton infliction of pain.'" Estelle, 429 U.S. at 105-06, 97 S.Ct. 285 (quoted in Farrow, 320 F.3d at 1243, and Harris, 706 F. App'x at 950).

In a claim for the denial of medical care, a plaintiff must show: "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts."  Taylor v. Adams, 221 F.3d 1254 (11th Cir. 2000), cert. denied, 531 U.S. 1077 (2001); Farrow, 320 F.3d at 1243.

---

[10] "Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all."  Bingham, 654 F.3d at 1176 (citing Brown v. Johnson, 387 F.3d 1344, 1451 (11th Cir. 2004)).

Put another way, to show a defendant acted with deliberate indifference, "a prisoner must show the prison official's: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence.'" Bingham, 654 F.3d at 1176 (quoting Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999)).

"However, not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' " McElligott, 182 F.3d at 1254 (citation omitted) (quoted in Farrow, 320 F.3d at 1243).  For example, medical malpractice does not constitute deliberate indifference.  Estelle, 429 U.S. at 106, 97 S. Ct. at 292.  "Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment." Harris, 941 F.2d at 1505 (citing Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989)).  "A 'complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.'" Estelle, 429 U.S. at 106, 97 S.Ct. at 292 (quoted in Bingham, 654 F.3d at 1176).  For example, the prisoner in Estelle received

treatment for his back injury, but complained that more should have been done in the way of diagnosis.  The Court rejected this as a basis for liability:

> But the question whether an X-ray--or additional diagnostic techniques or forms of treatment--is indicated is a classic example of a matter for medical judgment.  A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.

429 U.S. at 107, 97 S. Ct. at 293.  Put simply, an "official acts with deliberate indifference when he or she knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate."  McElligott, 182 F.3d at 1255 (citations omitted).  "In considering a deliberate indifference claim, '[e]ach individual Defendant must be judged separately and on the basis of what that person knows.'"  Burnette v. Taylor, 533 F.3d 1325, 1331 (11th Cir. 2008) (quoted in Melton v. Abston, 841 F.3d 1207, 1224 (11th Cir. 2016)).

Here, Defendants advance the theory that Plaintiff's claim is that "surgery would have been unnecessary had the Defendants provided proper medical care and he now has nerve damage."  ECF No. 92 at 10; see also p. 2.  In response, Defendants point out that the orthopedist deemed surgery as the better option.  Id. at 10.  Further, Defendants

contend that after the surgery, "all nerves in the right arm were intact on April 7, 2016." *Id.*

Defendants also argue that "nothing in this record supports a serious medical need that went unaddressed by the Defendants." ECF No. 92 at 11. They point out that neither Defendants Glavey or Price observed "signs of a fracture" during their examinations. *Id.* Defendants state that Plaintiff "was provided care" and suggest that Plaintiff's claim is nothing more than a "more should have been done" case, challenging the failure to order an x-ray. *Id.* at 10-11.

First, the Court disagrees with that statement of Plaintiff's claim. Plaintiff has asserted that the Defendants failed to provide adequate medical care for his fractured arm. ECF No. 99 at 1; *see also* ECF No. 1 at 5 (alleging that Defendants denied him medical services). True, Plaintiff stated his belief that "surgery would not have been necessary had [he] received the proper medical attention," *see* ECF No. 1 at 8-9, but that assertion is made to explain the harm caused by the failure to provide timely and adequate medical care for his broken arm.

As to the analysis of that claim, it is undisputed that Plaintiff's broken arm was a serious medical need and Defendants do not challenge that

fact.  "This Circuit has 'recognized a variety of medical needs as serious

medical needs,' including finding that 'broken bones and bleeding cuts are

serious medical needs that require attention within hours.'" Melton, 841

F.3d at 1222 (cited in Harris, 706 F. App'x at 951); *see also* Brown v.

Hughes, 894 F.2d 1533, 1538 n.4 (11th Cir. 1990) (per curiam) (collecting

cases and noting that a "recent traumatic injury," such as a beating,

automobile accident, soft-tissue shoulder injury, or a one and a half inch

bleeding cut, is generally sufficient to demonstrate a serious medical need).

Additionally, "[s]evere pain that is not promptly or adequately treated can

also constitute a serious medical need depending on the circumstances."

McElligott, 182 F.3d at 1255-59 (cited in Melton, 841 F.3d at 1222).

    This is not a case like Melton in which a bone was "sticking up under

the skin" and was "so obvious" that even a lay person could see the need

for medical attention.  841 F.3d at 1222.  However, it is similar to Melton in

that "a reasonable jury could find that [the prisoner's] severe pain and

suffering constituted a serious medical need." *Id.*  Plaintiff's evidence is

that when he first met with Defendant Glavey on March 11th, he reported

his arm was numb, he was sweating profusely, was nauseous, and began

to vomit.  ECF No. 1 at 6.  A reasonable inference to be made is that

Plaintiff was in a great deal of pain which caused him to vomit. Defendant Glavey requested that Defendant Scoggins examine him because of the severity of those symptoms, but that request was refused.

Furthermore, Plaintiff provided evidence that he declared a "medical emergency" the following day due to his "excruciating pain." *Id.* at 7. Plaintiff said that his arm was "highly swollen" when he saw Defendant Glavey for the second time on March 12th. *Id.* at 3. Viewing the evidence in the light most favorable to Plaintiff, the inference that must be made is that the swelling in his arm was quite obvious because Defendant Glavey contacted the physician at home about Plaintiff's condition and that doctor ordered two injections, one for swelling and one for pain. *See* ECF No. 99 at 3. However, Plaintiff testified that when he sought help from Defendant Glavey, none was provided. The record contains sufficient evidence to show that Defendant Glavey had a subjective awareness of Plaintiff's need for medical care. In spite of her knowledge, Plaintiff was not given pain medication for what he described as "excruciating pain" for three hours.[11]

---

[11] Furthermore, Plaintiff's medical records were presumably available to Defendant Glavey just as they were to Defendant Price. The records include a notation from Defendant Price stating that Plaintiff had already used all of the pain medication given to him the day before. ECF No. 91-1 at 8. That was also sufficient to alert Defendant Glavey to Plaintiff's pain level.

In spite of that knowledge, Plaintiff was required to wait two more days before he could be examined by a physician and receive medical care for his arm.

Moreover, the evidence reveals that a decision was made on Saturday to delay x-rays until Monday. A reasonable inference from that evidence is that Defendant Glavey suspected that Plaintiff had a broken arm but would take no action for two more days. The reason to delay the x-rays is unexplained.

Accordingly, there is evidence to show that Defendant Glavey was made aware that Plaintiff's pain had increased, that he had no more Ibuprofen, that he still could not move his arm, that Plaintiff believed his arm was broken, his arm was considerably swollen and bruised, yet he was not sent for treatment. Viewing these facts in the light most favorable to Plaintiff demonstrates that Defendant Glavey was deliberately indifferent to Plaintiff's pain and his medical needs. Defendant Glavey's request to grant summary judgment in her favor should be denied because a reasonable jury could conclude that Defendant Glavey unreasonably delayed medical care to Plaintiff. *See* Brown v. Hughes, 894 F.2d 1533, 1538 (11th Cir. 1990) (noting that an "unexplained delay of hours in treating a serious

injury" such as a broken foot presents "a prima facie case of deliberate indifference"); Melton, 841 F.3d at 1227 (finding it well established that an inmate's Eighth Amendment rights are violated "by failing to provide, unreasonably delaying or providing grossly inadequate medical care that causes an inmate to 'needlessly suffer' severe pain").

As for Defendant Price, her evidence shows that Plaintiff's arm was not swollen when she saw him in J-Dorm on Friday evening.  ECF No. 91-1 at 8.  She noted in the medical record that Plaintiff could not move his arm at the shoulder, and that he had already taken all his pain medication.  *Id.* However, there is no evidence to show that Defendant Price took any additional steps to assist Plaintiff.  Moreover, Plaintiff disputes Defendant Price's contention that his arm was not swollen.  ECF No. 99 at 2.  Plaintiff said he asked her for help and showed her his "highly swollen and bruised" arm which he contends was severe enough that "a lay person" could see that he needed medical care.  ECF No. 1 at 7.  He said he requested pain medication which she would not provide.  He also said that she did not even give him a proper sling.  *Id.*  Accordingly, there is a genuine dispute of material fact as to the visible symptoms of Plaintiff's injury.  If the evidence were construed in the light most favorable to Plaintiff, a reasonable jury

might conclude that Defendant Price was deliberately indifferent to Plaintiff's serious medical needs.  *See* Melton, 841 F.3d at 1226 (noting that Dr. Sullivan "failed to offer a sling or other device that might have relieved" the prisoner's suffering while aware that Melton was using "a towel as a make-shift sling" and did little to address his pain).  Summary judgment should be denied as to Defendant Price.

As for Defendant Scoggins, viewing the evidence in the light most favorable to Plaintiff reveals that this Defendant was asked by a nurse to examine Plaintiff on Friday, March 11th, yet he refused to do so.  No reason has been given to explain that refusal other than the fact that Plaintiff had gotten into a fight.  That is not a valid reason to withhold medical care.

By the time Defendant Scoggins examined Plaintiff on Monday, it was readily apparent that Plaintiff needed medical care.  Plaintiff points to evidence which suggests that Defendant Scoggins knew Plaintiff had an "unstable" fracture, *see* ECF No. 91-1 at 12, but Defendant Scoggins argues that he was only suspicious of a fracture.  ECF No. 92 at 3. Defendant Scoggins points to his own notation in the record which he says states that Plaintiff was to be sent to the ER "for evaluation."  ECF No. 101

at 2 (citing to ECF No. 91-1 at 9).  In submitting the summary judgment

motion, Defendant Scoggins made no effort to clarify the notation he made

in the record on March 14th, *see* ECF No. 91-1 at 9, which is virtually

illegible.  Nevertheless, it is apparent that when Defendant Scoggins saw

Plaintiff on Monday, he recognized Plaintiff's need for care and had Plaintiff

transported to the hospital.  That was appropriate and it matters little

whether he was sending Plaintiff "for treatment," ECF No. 92 at 3, or for

"evaluation," ECF No. 101 at 2, or as Plaintiff contends, because he knew it

was a fracture.  Regardless, he sent Plaintiff to obtain medical care.

However, the reason it matters little is because the relevant events

pertaining to Plaintiff's claim against Defendant Scoggins took place on

Friday.  The undisputed evidence shows that Defendant Scoggins was

notified of Plaintiff's condition and, according to Plaintiff, Nurse Glavey

specifically asked him to examine Plaintiff.  Defendant Scoggins refused.

"[A]n official acts with deliberate indifference when he or she knows that an

inmate is in serious need of medical care, but he fails or refuses to obtain

medical treatment for the inmate."  McElligott v. Foley, 182 F.3d 1248,

1255 (11th Cir. 1999) (citing Lancaster v. Monroe County, Ala., 116 F.3d

1419, 1425 (11th Cir. 1997), and Mandel v. Doe, 888 F.2d 783, 788 (11th

Cir. 1989) (noting that "knowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference")). If Plaintiff's evidence is believed, a reasonable jury could find that by refusing a request made by another medical provider to examine a prisoner solely because he had gotten into a fight, the physician's assistant violates a prisoner's right to medical care as guaranteed by the Eighth Amendment. That is especially true where a prisoner is injured on a Friday and "sick call" visits are not available until after the weekend.  Summary judgment should be denied as to Defendant Scoggins.

**RECOMMENDATION**

It is respectfully **RECOMMENDED** that Defendants' motion for summary judgment, ECF No. 92, be **DENIED**, and this case be **REMANDED** for further proceedings prior to setting the case for trial.

**IN CHAMBERS** at Tallahassee, Florida, on July 19, 2019.


 S/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>  If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**